THE JESSE W. KNIGHT *v.* THE WM. R. McCABE.

*(District Court, E. D. Pennsylvania. January 6, 1891.)*

1. COLLISION—VESSELS END ON—CHANGE OF COURSE.
    The libelant, passing down Chesapeake bay at night, south by east, met respondent making north-north-west, the red lights of each appearing slightly off the port bow of the other. The respondent turned slightly east, and the libelant, when from 300 to 400 yards off, also turned in the same direction, and collided. *Held,* as libelant should have assumed, when so close to the respondent, that the latter had accommodated himself to the situation, and should have held her course, she was in fault.

2. SAME—DUTY TO REVERSE.
    The respondent failed to keep well off from the libelant, which, when about 300 or 400 yards off, made an abrupt turn, causing the disappearance of her lights. It did not appear from the steamer in which direction the change of course was made. *Held* respondent in fault for not stopping or reversing, even if it was not certain that stopping or reversing would have avoided the collision.

Libel for Damages for Collision by the Schooner Jesse W. Knight against the Steamer Wm. R. McCabe.

*Jos. L. Tull* and *Coulston & Driver,* for libelant.

*Flanders & Pugh,* for respondent, cited on the duty of schooner to hold her course sailing rule 22; *The Allianca,* 39 Fed. Rep. 476; *The America,* 37 Fed. Rep. 813. The change of course of schooner even if made at a considerable distance was a fault. *The Catharine* v. *Dickinson,* 17 How. 170. The vessel which ought to hold her course must not embarrass the vessel whose duty it is to keep away by a change of course. *The Illinois,* 103 U. S. 299; *The Virginia,* 24 Fed. Rep. 765.

BUTLER, J. As the libelant passed down the Chesapeake bay, at night, June 25, 1889, on a voyage from Baltimore to Norfolk, she encountered the respondent coming up, from the latter place to the former, was run into and sunk. The respective courses of the vessels as they came into view is uncertain. The libelant states hers to have been south by east, and the respondent says his was north-north-west. Each saw

the other's red light slightly off the port bow. The respondent, deeming the courses unsafe, turned slightly eastward. The libelant also turned in this direction, at some point between that at which she first saw the respondent—a half to three quarters of a mile away, as she says—and the place of collision. The direction of the wind was, I believe—though the evidence respecting it is conflicting—to be nearly east; probably a little north of that point. The tide was flood. The distance between the vessels when the libelant turned eastward cannot be known with accuracy. The witnesses differ about it, and, as is manifest, none of them can form a reliable judgment on the subject. It is clear, however, that the change occurred some little time, at least, after she observed the steamer's light; and probably a longer time after the steamer observed hers. I believe from a careful examination of all the evidence bearing on the subject that it occurred when the vessels were within 300 to 400 yards apart. Whether it was at this distance or earlier, it was in my judgment, unjustifiable; and tended directly to the disaster which followed. After the vessels had come fully into view, so near together, as described by the libelant's mate, it should have been assumed by the latter that the respondent had then accommodated himself to the situation, by adopting proper measures for passing and the libelant should have steadily held her course. Any change on her part after that tended to embarrass the respondent, and should have been avoided. It is urged that the change was intended to hold and steady her on the original course, only, and that it had no greater effect. This view, however, is clearly repelled by her mate's testimony, as well as by the circumstances of the collision. She turned eastward, quite abruptly, I think, with a view to passing the respondent on that side—"fully bringing out her green light" to him, as the mate testifies, expecting him, as the witness further says, to respond to this signal, by turning in the opposite direction. The statements of the mate immediately after the collision, are to the same effect, though fuller. They seem plainly to admit the libelant's error. She had no right to require the respondent to turn westward, after the latter had adopted measures for passing. A change of course under the circumstances—even at the distance of half a mile—was inexcusable. There was no necessity requiring it. To grope after the motive for this conduct would be unprofitable. An apparent absence of motive, and the fact that it was dangerous and reckless can have no weight against the clear proof that it occurred. I need not pursue the subject. The libelant was wrong in making the change. I cannot attach any importance to the testimony of her lookout, on this subject. He seems to be extremely ignorant even for the class of men employed on such vessels. He did not know, and could not even approximate, the course of either vessel, nor indeed understand the meaning of the term "course." He did not distinguish the steamer's head-light though it was burning brightly and in plain view, nor observe that the schooner changed her course, though it is entirely plain she did. It is doubtful whether he was competent for any responsible duty on board. It is unnecessary to inquire whether the libelant was guilty of other misconduct; or to specu-

late on the question whether she would have been struck if she had held her original course.

I do not think, however, that she alone, was in fault. The respondent should, probably, have kept further off. He should have calculated for some little variation in the schooner's course—such as may arise from wind and tide, without change of wheel. There was nothing to prevent him from going further away, and I incline to believe he should have done so. He evidently, and naturally desired to keep very near the original course—as near as he could and escape collision. A majority of such disasters arise from this mistake. Yet it is not certain that he should be held responsible on this account, and I am not sure he should be so held, if nothing more appeared against him. He seems, however, to have been clearly wrong in not stopping (and probably reversing) his engine immediately upon the schooner's light disappearing. He had observed this light for more than a mile, steadily approaching on a direct course, and saw it disappear suddenly, as he says, when within 200 or 300 yards. According to the witnesses' statement of the lapse of time the distance was considerably greater. Neither statement, however, can be relied on as accurate. It is quite as probable the distance was 300 to 400 yards, as that it was less; I think more so. The disappearance of the light could only arise from an abrupt, and under the circumstances extraordinary, change in the schooner's course. It seems incredible that a constant and vigilant lookout, properly stationed, should not have observed whether it disappeared eastward or westward. Granting, however, that he should not, and that the steamer was thus left to conjecture, respecting her course, there was no more reason to suppose that she turned westward than eastward. In either event—whether it could or could not be seen—therefore it seems plain that the steamer should have stopped, or at least slowed down, until the fact was ascertained. Instead of doing so he continued his course without diminution of speed, until the schooner was directly across his bows only a few yards distant. It is not a satisfactory answer to say that there was no time to deliberate and that nothing could then be accomplished. The natural and first impulse would have been to stop if the mate had not taken it for granted, as he says, that the schooner turned westward. This was entirely unjustifiable. As before stated, the same appearance would be presented if she turned eastward, and to rely on the supposition which he seems to have entertained, that she had not so turned because this course was dangerous, was unjustifiable and careless. It cannot be known with certainty whether the collision would have been avoided by a prompt endeavor to stop; but it, nevertheless was the respondent's duty to make the effort. I think it probable that the accident would have been avoided if he had done so. When he saw her directly across his bows 40 feet away, he made the effort, as it was his duty to do even then, but it was too late.

It is useless to consider other questions raised. For the reasons stated, both vessels must be adjudged in fault, and a decree be entered accordingly.